**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

GERVAISE CULMER,              ::    HABEAS CORPUS
     Petitioner,                ::    28 U.S.C. § 2254
                                   ::
     v.                        ::
                                   ::
DAVID FRAZIER, *Warden*,    ::    CIVIL ACTION NO.
     Respondent.          ::    1:12-CV-0551-RWS-RGV

## FINAL REPORT AND RECOMMENDATION

Petitioner seeks via 28 U.S.C. § 2254 to challenge his March 22, 2002, convictions in the Superior Court of Fulton County.  The matter is now before the Court on the petition, [Doc. 1], respondent's answer-response, [Doc. 5], and petitioner's counseled reply and brief in support of his petition, [Doc. 9].[1]  For the reasons stated herein, the undersigned **RECOMMENDS** that the petition be **DENIED**.

## I.  PROCEDURAL HISTORY

A Fulton County jury found petitioner "guilty of malice murder, felony murder (aggravated assault), aggravated assault, and theft by taking" in connection with the death of Patrice Peart.  <u>Culmer v. State</u>, 647 S.E.2d 30, 33 n.1 (Ga. 2007).  The court imposed a sentence of life imprisonment for murder and a twelve-month concurrent

---

[1] Docket entry number 10 is identical to docket entry number 9.

sentence for theft by taking. Id. Petitioner's felony murder conviction was vacated by operation of law, and his aggravated assault conviction was merged into his murder conviction. Id. Theodore Johnson represented petitioner at trial. [Doc. 15-1 at 119]. The Georgia Supreme Court summarized the evidence presented at trial as follows:

> [Petitioner] and Peart met in 1994 and began a relationship described by witnesses as turbulent. They eventually worked together in Atlanta where co-workers observed the deterioration of the relationship. [Petitioner] was heard to threaten Peart's life and was eventually dismissed from his job because of his attitude toward Peart and changes in his behavior at work. Phone records introduced at trial established [petitioner] called Peart from her apartment in the afternoon of the last day Peart was seen alive, June 7, 2001. She left work around 5:00 p.m. with plans to meet a friend an hour later, but did not appear. [Petitioner] called Wanda Michaux from Peart's apartment just before 6:00 p.m. and spent the night at her home. Peart's body was found on June 11, and testimony established she died of blunt force trauma to her neck, probably the result of strangulation. [Petitioner's] DNA was in a semen sample taken from Peart's body. Peart's purse was found in the apartment, but its contents were missing. A search of Michaux's home yielded a partially burned check belonging to Peart discovered in the fireplace. Other items belonging to Peart were found in [petitioner's] home along with a drawing of a person making choking motions. [Petitioner's] defense was that Peart was killed by another man, James Johnson, with whom Peart had a relationship and who had found out she was still seeing [Petitioner].

Culmer, 647 S.E.2d at 33.

Petitioner, represented by new counsel, Steven E. Phillips, moved for a new trial. [Doc. 14-17 at 36-38, 42-89; Doc. 14-18 at 1-15]. After conducting a hearing,

2

[Doc. 12-1], the trial court denied petitioner's motion for a new trial. [Doc. 12-2]. Still represented by Phillips, petitioner filed a direct appeal, arguing that (1) counsel was ineffective for failing to (a) investigate the phone records of the victim and present exculpatory evidence and (b) make meritorious objections to the testimony of nine witnesses regarding prior difficulties between petitioner and Peart, (2) the trial court erroneously admitted evidence of these prior difficulties, and (3) the trial court erroneously refused to instruct the jury on the lesser included offense of voluntary manslaughter. Brief of Appellant, Culmer, 647 S.E.2d 30 (No. S07A0242), 2006 WL 5441678 at *31-85. The Georgia Supreme Court affirmed petitioner's convictions on June 25, 2007, and denied reconsideration on July 26, 2007. Culmer, 647 S.E.2d at 36.

On May 21, 2008, petitioner filed a habeas corpus petition in the Superior Court of Washington County, arguing that he received ineffective assistance of counsel when: (1) appellate counsel failed to argue that the trial judge violated petitioner's federal constitutional rights by refusing to charge the jury on the lesser included offense; (2) appellate counsel failed to argue that the trial judge violated petitioner's federal constitutional rights by allowing multiple witnesses to testify about prior difficulties between petitioner and Peart; (3) appellate counsel failed to properly argue the prejudice prong of petitioner's ineffective assistance of trial counsel claim as it

3

relates to the phone records;[2] (4) trial counsel failed to investigate and offer testimony from the victim's best friend, Carlene Moonga, and appellate counsel failed to raise this ineffective assistance claim on direct appeal; (5) trial counsel failed to fully investigate the validity, circumstances, and results of the search of Micheaux's home, and appellate counsel failed to raise this ineffective assistance claim on direct appeal; and (6) trial counsel failed to consult with independent medical experts to review the medical findings at trial, and appellate counsel failed to raise this ineffective assistance claim on direct appeal. [Doc. 8-1 at 1, 4]. The Superior Court of Washington County transferred petitioner's state habeas petition to the Superior Court of Telfair County on March 30, 2009. [Doc. 8-2 at 3]. Evidentiary hearings were conducted in Telfair County on August 3, 2010, [Doc. 13-1 at 1-65], and on September 1, 2010, [Doc. 16-17 at 1-12]. Based on Kevin Cruse's testimony at the August 3, 2010, hearing, the habeas court found that petitioner also alleged a seventh ground for relief–that trial and appellate counsel failed to investigate properly another ex-boyfriend of the victim as a suspect. [Doc. 8-2 at 11]. The habeas court entered a written order denying the

---

[2] As to this ground, the habeas court considered whether appellate counsel should have reviewed evidence about the lead detective's contact information being in the victim's address book. [Doc. 8-2 at 7-8].

AO 72A
(Rev.8/82)

petition, [Id.], and on January 23, 2012, the Georgia Supreme Court denied petitioner a certificate of probable cause to appeal the denial of habeas corpus relief, [Doc. 8-3].

On February 21, 2012, petitioner timely filed this § 2254 petition, arguing that: (1) his trial counsel was ineffective for failing to investigate the victim's telephone records and present exculpatory evidence; (2) both his (a) trial and (b) appellate counsel were ineffective for failing to interview Cruse; and (3) both his (a) trial and (b) appellate counsel were ineffective for not reviewing evidence about the lead detective's contact information being in the victim's address book. [Doc. 1 at 4-5]. Respondent argues that the state court's decision rejecting ground (1) and (3)(b) are entitled to deference, that the state habeas court correctly found that ground (2)(a) was procedurally defaulted because it was not raised on direct appeal, and grounds (2)(b), (3)(a), and 3(b) were procedurally defaulted because they were never raised in state court. [Doc. 5-1 at 5-15]. Petitioner replies that the state court's rejection of ground (1) and ground (2)(a) are not entitled to deference because the court unreasonably applied the prejudice prong of Strickland v. Washington, 466 U.S. 668 (1984), that ground (2)(a) is not procedurally defaulted because petitioner's failure to raise it on direct appeal was due to the ineffective assistance of appellate counsel and the state habeas court addressed the merits of the claim, and that grounds (2)(b) and (3)(a) are

5

not procedurally defaulted because they "were made before the state habeas court." [Doc. 9 at 8-24].

## II. DISCUSSION

**A.** **Procedurally Defaulted Grounds for Relief**

**1.** **Rules Regarding Procedural Default**

In general, a state prisoner who seeks federal habeas corpus relief may not obtain that relief unless he first exhausts his available remedies in state court or shows that a state remedial process is unavailable or ineffective. 28 U.S.C. § 2254(b)(1). "Pursuant to the doctrine of procedural default, a state prisoner seeking federal habeas corpus relief, who fails to raise his federal constitution[al] claim in state court, or who attempts to raise it in a manner not permitted by state procedural rules is barred from pursuing the same claim in federal court . . . ." Alderman v. Zant, 22 F.3d 1541, 1549 (11th Cir. 1994). Thus, when "the last state court to review the claim" finds that a claim is defaulted because the petitioner failed to raise it at trial or on direct appeal, the petitioner is not entitled to review of that claim in a federal habeas corpus proceeding. Hill v. Jones, 81 F.3d 1015, 1022 (11th Cir. 1996) ("Federal courts may not review a claim procedurally defaulted under state law if the last state court to review the claim states clearly and expressly that its judgment rests on a procedural bar, and the bar

6

presents an independent and adequate state ground for denying relief."). Additionally, a claim not previously raised in state court is procedurally defaulted when it is clear that a state court would now find that it is "barred by [state] law" from considering the merits of the claim. Castille v. Peoples, 489 U.S. 346, 351 (1989).

The procedural default rule with respect to federal habeas corpus petitions is not without exceptions, however. A petitioner can overcome a procedural default by showing "cause" for the default and resulting "prejudice" or that "a fundamental miscarriage of justice" will occur if the claim is not addressed. Mincey v. Head, 206 F.3d 1106, 1135 (11th Cir. 2000); see also Agan v. Vaughn, 119 F.3d 1538, 1548 (11th Cir. 1997) ("A state court's determination that a claim is barred from review in state court because of the petitioner's failure to comply with state law procedures for presenting the claim precludes federal habeas review of that claim, unless the petitioner can show both cause for the default and prejudice arising therefrom or that the failure to review the claim would result in miscarriage of justice." (internal quotation marks and citation omitted)). An ineffective-assistance-of-counsel claim, if both exhausted and not procedurally defaulted, may constitute cause. Hill, 81 F.3d at 1029-31. If a petitioner has not shown cause to excuse the procedural default, a federal court need not consider whether he can demonstrate actual prejudice from the alleged

AO 72A
(Rev.8/82)

constitutional violation.  <u>McCleskey v. Zant</u>, 499 U.S. 467, 502 (1991).  In order to establish that a failure to review a defaulted claim will result in a fundamental miscarriage of justice, a petitioner must support his claim with "new reliable evidence . . . that was not presented at trial" and "show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." <u>Schlup v. Delo</u>, 513 U.S. 298, 324, 327 (1995).

## 2. <u>Grounds (2)(a) and (3)(a)</u>

The state habeas court found ground (2)(a)–trial counsel's alleged failure to interview Cruse–procedurally barred from habeas review because petitioner did not raise it on direct appeal and had not shown cause and prejudice to excuse the default. [Doc. 8-2 at 13-14].  Additionally, it does not appear that petitioner raised ground (3)(a)–trial counsel's alleged failure to review evidence about the lead detective's contact information being in the victim's address book–in his state habeas petition. However, even if he had, the state habeas court would have found it procedurally bared for failure to raise it on direct appeal.

If a petitioner fails to comply with "procedural rules at trial and on appeal[,] . . . habeas corpus relief shall not be granted."  O.C.G.A. § 9-14-48(d).  Additionally, where, as here, a petitioner has new counsel on his direct appeal, Georgia law requires

AO 72A
(Rev.8/82)

that he raise his ineffective assistance of trial counsel claims during his direct appeal or such claims are waived and procedurally defaulted. White v. Kelso, 401 S.E.2d 733, 734 (Ga. 1991). Because the state habeas court found that petitioner had failed to comply with these procedural rules, which are independent and adequate state-law grounds for denying relief, petitioner is not entitled to federal habeas review of these grounds absent an exception to the procedural default rule. See Agan, 119 F.3d at 1548; see also Woodford v. Ngo, 548 U.S. 81, 93 (2006) (holding that "if state-court remedies are no longer available because the prisoner failed to comply with . . . [state-court rules], those remedies are technically exhausted, [] but . . . the prisoner generally is barred from asserting those claims in a federal habeas proceeding").

As discussed hereinafter in section II(B), petitioner has not shown ineffective assistance of appellate counsel to excuse the default of these grounds. Further, petitioner has not alleged any other cause or a fundamental miscarriage of justice to excuse the procedural default of these grounds. Therefore, petitioner is not entitled to federal habeas relief with respect to grounds (2)(a) and (3)(a). See Id.

AO 72A
(Rev.8/82)

**B.** **Grounds Adjudicated on the Merits**

**1.** **28 U.S.C. § 2254 Standards**

Under 28 U.S.C. § 2254, a federal court may issue a writ of habeas corpus on behalf of a person being held in custody pursuant to a judgment of a state court if that person is held in violation of his rights under federal law. 28 U.S.C. § 2254(a). A federal court may not grant habeas corpus relief for claims previously adjudicated on the merits by a state court unless the state court adjudication resulted in a decision that (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Id. § 2254(d); Van Poyck v. Fla. Dep't of Corrs., 290 F.3d 1318, 1322 n.4 (11th Cir. 2002) (per curiam) ("[I]n the context of a habeas review of a state court's decision–only Supreme Court precedent can clearly establish the law.").

When applying § 2254(d), the federal court evaluating a habeas petition must first determine the applicable "'clearly established Federal law, as determined by the Supreme Court of the United States.'" Williams v. Taylor, 529 U.S. 362, 404-05 (2000) (quoting 28 U.S.C. § 2254(d)(1)). Next, the federal habeas court must ascertain

10

whether the state court decision is "contrary to" that clearly established federal law by determining if the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law, or whether the state court reached a result different from the Supreme Court on a set of materially indistinguishable facts. Id. at 412-13. In other words, a state court decision is "contrary to" clearly established federal law only when it "applies a rule that contradicts the governing law set forth in [Supreme Court] cases." Id. at 405; see also Early v. Packer, 537 U.S. 3, 8 (2002) (per curiam) (holding that a state court decision is not contrary to federal law simply because it does not cite Supreme Court authority; the relevant inquiry is whether the reasoning or the result of the state decision contradicts that authority).

If the federal habeas court determines that the state court decision is not contrary to clearly established federal law, it must then determine whether the state court decision was an "unreasonable application" of clearly established federal law by determining whether the state court identified the correct governing legal principle from the Supreme Court's decisions but unreasonably applied that principle to the facts of the petitioner's case. Williams, 529 U.S. at 413. "For purposes of § 2254(d)(1), 'an unreasonable application of federal law is different from an incorrect application of federal law.'" Harrington v. Richter, 131 S. Ct. 770, 785 (2011) (quoting

Williams, 529 U.S. at 410) (emphasis in original). "Under § 2254(d)(1)'s 'unreasonable application' clause, . . . a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly [but r]ather, that application must also be unreasonable." Williams, 529 U.S. at 411. Thus,

> [a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

Harrington, 131 S. Ct. at 786-87; see also Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) ("Where [in a federal habeas corpus petition] the state court's application of governing federal law is challenged, it must be shown to be not only erroneous, but [also] objectively unreasonable."). Additionally, the state court's determinations of factual issues are presumed correct. 28 U.S.C. § 2254(e)(1). A petitioner can overcome this presumption only by presenting "clear and convincing evidence" that the state court's findings of fact were erroneous. Id.

The undersigned has reviewed the pleadings and exhibits and finds that the record contains sufficient facts upon which the issues may be resolved. As petitioner has not made the showing required by 28 U.S.C. § 2254(e)(2) to entitle him to an

12

evidentiary hearing, the undersigned finds that no federal evidentiary hearing is warranted, and the case is now ready for disposition.

## 2. Clearly Established Federal Law

In this Court's review of the state courts' denial of petitioner's ineffective assistance of counsel claims, "the relevant clearly established law [for purposes of 28 U.S.C. § 2254(d)] derives from Strickland v. Washington, 466 U.S. 668 (1984), which provides the standard for inadequate assistance of counsel under the Sixth Amendment." Premo v. Moore, 131 S. Ct. 733, 737-38 (2011); see also Eagle v. Linahan, 279 F.3d 926, 938 (11th Cir. 2001) (applying Strickland to allegations of ineffective assistance of appellate counsel). "The pivotal question" before this Court "is whether the state court's application of the Strickland standard was unreasonable." Harrington, 131 S. Ct. at 785. "This is different from asking whether defense counsel's performance fell below Strickland's standard." Id.

The Strickland analysis is two-pronged. However, a court need not address both prongs "if the defendant makes an insufficient showing on one." Strickland, 466 U.S. at 697. First, a convicted defendant asserting a claim of ineffective assistance of counsel must show that "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent

13

assistance." Id. at 690. A court analyzing Strickland's first prong must be "highly deferential" and must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; Atkins v. Singletary, 965 F.2d 952, 958 (11th Cir. 1992) ("We also should always presume strongly that counsel's performance was reasonable and adequate."); see also Harrington, 131 S. Ct. at 788 ("'Surmounting Strickland's high bar is never an easy task.'" (quoting Padilla v. Kentucky, 130 S. Ct. 1473, 1485 (2010)). Counsel is not incompetent so long as the particular approach taken could be considered sound strategy. Chandler v. United States, 218 F.3d 1305, 1314 (11th Cir. 2000) (en banc); see also Smith v. Murray, 477 U.S. 527, 536 (1986) ("[W]innowing out weaker arguments on appeal and focusing on those more likely to prevail . . . is the hallmark of effective appellate advocacy.") (internal quotation marks and citation omitted).

In order to meet the second prong of Strickland, a petitioner must demonstrate that counsel's unreasonable acts or omissions prejudiced him. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Strickland, 466 U.S. at 691. In order to demonstrate prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

14

proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.; see also Eagle, 279 F.3d at 943 ("To determine whether the [unreasonable] failure to raise a claim on appeal resulted in prejudice, we review the merits of the omitted claim.").

When this deferential Strickland standard is "combined with the extra layer of deference that § 2254 provides, the result is double deference and the question becomes whether 'there is any reasonable argument that counsel satisfied Strickland's deferential standard.'" Johnson v. Sec'y, DOC, 643 F.3d 907, 910-11 (11th Cir. 2011) (quoting Harrington, 131 S. Ct. at 788). "Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding." Id. at 911.

**3.    Ground (1): Trial Counsel's Failure to Investigate Telephone Records**

In ground (1), petitioner asserts that trial counsel was ineffective for failing to investigate Peart's telephone records and present exculpatory evidence that a call from Johnson's home telephone number to Peart's apartment was answered hours after the State claimed that petitioner had killed Peart. [Doc. 1 at 4; Doc. 9 at 8]. After

15

correctly setting forth the standard for reviewing ineffective assistance of counsel

claims, the Georgia Supreme Court rejected this claim, stating:

> [Petitioner] maintains trial counsel was ineffective by failing to understand and make proper use of telephone records introduced at trial. Telephone records played an important role in [petitioner's] prosecution. The State used records of calls to and from Peart's home and [petitioner's] cell phone records to establish [petitioner's] presence in Peart's home at the time Peart was alleged to have been killed, supporting its theory that [petitioner] entered Peart's apartment and waited there to kill her when she arrived home. On motion for new trial and on appeal, [petitioner] has focused on a one-minute telephone call from James Johnson to Peart's home made at 10:39 p.m. on the evening of the last day Peart was seen alive, a time at which, under the State's theory of the case, Peart was already dead. [Petitioner] contends that if trial counsel had properly investigated that call, which phone records showed to have been answered, the State's case would have unraveled because the records showed Peart was still alive long after [petitioner] departed. Our review of the trial transcript does not support that position. Much of [petitioner's] argument regarding the phone records is based on testimony presented at the hearing on [petitioner's] motion for new trial by the custodian of the phone records. That testimony, which explained that the one-minute phone calls shown on the records were calls that were answered by automated voice mail, did not explain certain anomalies in the phone records, of which the 10:39 p.m. call was one. As to that call, when the witness was asked whether the record showed the call was answered either by a person or an answering machine, the witness temporized, saying, "As far as we can tell," and "As far as I can tell," and "Not the call that he was asking me on." Other anomalies in the phone record included several calls for which the voice mail system was activated prior to the time the record showed the call being placed and several calls that were shown not to be answered at all even though testimony established that all calls to Peart's number should have been forwarded to voice mail if not answered by a person or an answering

16

machine. In addition, there was direct evidence, in the form of Johnson's testimony that he never spoke to Peart again after a phone conversation at 4:19 p.m. on the day she died, that the 10:39 p.m. call placed by Johnson from his home was not answered by Peart. Thus, the circumstantial evidence on which [petitioner] relies showed no more than one of a number of unexplained anomalies in the telephone records and was countered by direct evidence to the contrary. That being so, we conclude trial counsel's failure to place greater emphasis on that 10:39 p.m. call does not raise a reasonable probability that, but for counsel's alleged error, the outcome of the trial would have been different. Therefore, pretermitting the question of deficient performance (Walker v. Houston, 277 Ga. 470(1), 588 S.E.2d 715 (2003) (appellate court not required to address both components if showing on one insufficient)), [petitioner] has not established the prejudice prong of a claim of ineffective assistance of counsel with regard to the telephone records.

Culmer, 647 S.E.2d at 34-35.

Petitioner argues that the Georgia Supreme Court unreasonably applied Strickland's prejudice prong because: (1) the custodian of the phone records testified at the hearing on petitioner's motion for a new trial that Johnson's 10:39 p.m. call was either answered by someone in the apartment or by a standalone answering machine "long after the State could place [petitioner] in the area"; (2) no standalone answering machine was documented at Peart's apartment, and Peart used Memory Call (a voice mail service), which eliminated the need for a standalone answering machine; (3) the court improperly gave more weight to the testimony of Johnson, the other person petitioner accused of murdering Peart; (4) the custodian's testimony was unequivocal,

17

and the alleged "anomalies" were not "errors at all"; and (5) the phone records show that the prosecution's theory is factually impossible and that Johnson lied regarding when he last spoke to Peart. [Doc. 9 at 8-9, 11-16].

Petitioner argues that "the phone records undermine confidence in [his] conviction for two reasons – if used at trial, the phone records would have shown (1) the prosecution's theory to be factually impossible; and (2) James Johnson to have lied about when he last spoke to Peart." [Id. at 16]. However, the telephone records were, in fact, used at trial as they were admitted as State's Exhibit 12, and the telephone records showed the specific call in question from Johnson's home phone (770-860-8527) to Peart's home phone (404-352-8181) at 10:39 p.m. on June 7, 2001, with an entry on the record indicating the call was "answered." [Doc. 15-3 at 5-6; Doc. 16-3 at 12, 17].[3] Moreover, petitioner's trial counsel specifically asked Johnson about calling Peart at that time as well as five others calls to her home phone after the time of death argued by the prosecution, [Doc. 15-6 at 97-99], and counsel vigorously cross-examined Johnson about when he last spoke to Peart, even directly accusing Johnson

_____

[3] The phone records listed the date, time, calling number, called number, duration, and whether the call was answered. [Doc. 16-3 at 12-19]. The entry for the 10:39 p.m. call from Johnson's home phone to Peart's home phone on June 7, 2001, call number 193 on the records, indicated the call was "answered." [Doc. 16-3 at 17].

AO 72A
(Rev.8/82)

of killing Peart. [Id. at 96-102]. In his closing argument, petitioner's trial counsel challenged the proof regarding the time of Peart's death and specifically argued that the phone records showed that Peart "received a call – six calls from [Johnson]" after the time of death argued by the prosecution. [Doc. 16-2 at 19]. Thus, the jury had the telephone records showing Johnson's call to Peart's home was "answered" at 10:39 p.m., heard argument from petitioner's counsel that the telephone records called into question the time of Peart's death, and had the opportunity to evaluate Johnson's credibility and consider whether he may have been the killer, yet the jury still convicted petitioner of murdering Peart.

Petitioner claims that the outcome of his trial may have been different had the jury heard the testimony presented at the hearing on his motion for new trial. Specifically, the BellSouth custodian of records, Suzette Jackson, testified at that hearing that the 10:39 p.m. call was either answered by someone in the apartment or by a standalone answering machine because the phone records did not indicate that it was answered by the Memory Call system. [Doc. 12-1 at 14-18, 23-24, 35-36]. However, as the Geogia Supreme Court noted, and as petitioner concedes, [Doc. 9 at

AO 72A
(Rev.8/82)

13], Ms. Jackson qualified her testimony on this point,[4] and rightly so, because after the hearing on petitioner's motion for a new trial, petitioner submitted the affidavit of Lavonne Westbrooks, a compliance assistant with BellSouth, to explain certain anomalies in Peart's phone records, namely why those records showed, in some instances, that the Memory Call system was activated before an incoming call was received. [Doc. 14-18 at 42-45].

According to Ms. Westbrooks, the phone records would normally show a call received by the home phone number (404-352-8181) followed by an entry showing the home phone number calling the Memory Call system number (404-898-8600). [Id. at 44-45]. This pattern appears throughout the phone records, [Doc. 16-3 at 15-18], but Ms. Westbrooks explained that there are some anomalies in the records because a call is routed through a number of central offices and the timestamp for each call may vary between offices by up to two minutes, so there are instances in which a call that is

---

[4] Petitioner points to one instance in which Ms. Jackson affirmed the judge's summary of her testimony about the 10:39 p.m. call, [Doc. 9 at 13 citing Doc. 12-1 at 23-24], but on each other occasion, Ms. Jackson qualified her testimony, as noted by the Georgia Supreme Court. See [Doc. 12-1 at 16-17, 19-20]. Moreover, on cross-examination, Ms. Jackson testified that the entry on the phone records indicating the call was "answered" could mean "either that somebody picked it up, the phone went into voice mail, or an answering machine picked it up," but she did not know which one of those three it was for the call in question. [Id. at 19-20].

AO 72A
(Rev.8/82)

quickly forwarded to Memory Call is listed in reverse order. [Doc. 14-18 at 44]. Ms. Westbrooks referenced call numbers 208-09, 217-18, and 221-22 as examples of this phenomenon. [Id. at 44-45]. In those instances, the phone records show that a call to the home phone number was "answered" one minute after the home phone called the Memory Call number. [Id.].

As the Georgia Supreme Court noted, the call at issue in this case, call 193, appears to have been another anomaly in the phone records. A minute before call 193 was made, Johnson's number called Peart's number and Peart's number called Memory Call. [Id. at 51, call #'s 191-93; see also Doc. 12-1 at 13-14, 23]. Neither Ms. Westbrooks nor Ms. Jackson, the custodian of records who testified at the new trial hearing, addressed whether a call coming in so soon after the Memory Call system was activated could affect the system's ability to pickup the second incoming call.[5]

---

[5] In fact, the phone records reflect that when Peart's home phone was in use, the records would still show that the home phone "answered" a call. For example, on June 7, 2001, a 14 minute call originated from Peart's home phone (404-352-8181) at 4:33 p.m., yet the records show that at 4:37 p.m., her home phone "answered" an incoming call from another number and the home phone then called the Memory Call number at 4:37 p.m. [Doc. 16-3 at 17, Call Nos. 184-86]. This illustrates that the phone records can show that Peart's home phone was "answered" when, in fact, the incoming call was not actually answered because the phone was otherwise in use, further minimizing the probative value of these records to support petitioner's contention. In other words, the phone records may simply show that call 193 was "answered" at 10:39 p.m. because Peart's home phone was in use calling the Memory Call number

AO 72A
(Rev.8/82)

Based on the ambiguity of the phone records, and considering the evidence and arguments actually presented at the trial, the undersigned cannot find that the Georgia Supreme Court's conclusion that petitioner had not shown a reasonable probability that the outcome of his trial would have been different had this evidence been presented "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, 131 S. Ct. at 786-87.  Thus, the Georgia Supreme Court's rejection of ground (1) is entitled to deference pursuant to § 2254(d).  See id. at 785; Williams, 529 U.S. at 404-05, 412-13, Strickland, 466 U.S. at 694.

**4.      Ground (2)(b): Appellate Counsel's Failure to Interview Cruse**

In ground (2)(b), petitioner argues that appellate counsel was ineffective for failing to interview Cruse regarding his statement that Peart had shared with him some concerns about an ex-boyfriend. [Doc. 1 at 4].  Because petitioner asserts that the state habeas court "ruled on the merits of this claim," [Doc. 9 at 23], and because that court addressed it as a claim that appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness for failing to interview Cruse, [Doc. 8-2 at 14], this Court

---

at that same point in time since the time stamps can vary by one to two minutes, not because someone or an answering machine actually answered the call. See [Doc. 16-3 at 17, Call Nos. 191-93].

22

will also address it as such.  The state habeas court made the following findings of fact as to this ground:

Kevin Cruse, a friend of the victim, testified at the August 3, 2010, evidentiary hearing that the victim had shared with him some concerns she had about a former male friend of hers and that she had previously sought some protection from law enforcement.  (HT1 34).  He testified that the victim never identified this former friend by name, but stated that the former friend had some belongings of hers, that the former friend was a police officer, and that the former friend had a tie to the Atlanta University System.  (HT1 34, 36).  He testified that he did not speak with Petitioner's trial counsel before he testified at Petitioner's trial and that he was never asked to testify during Petitioner's trial regarding this former friend of the victim.  (HT1 36-37).  He testified that the victim did not say whether the former friend was a police officer at the time she shared her concerns with him or had been a police officer in the past.  (HT1 38).  He testified that the victim never told him that the former friend was a police officer for the Atlanta University System and that he never knew where the former friend was a police officer.  (HT1 10-41).

The victim had previously been seeing a man named James Johnson who served with the Fulton County School System Police Department.  (HI1 430).  Mr. Johnson testified at Petitioner's trial that at the time of the victim's death he had a pair of her sandals that she had told him she wanted back.  (HT1 3323).  However, Petitioner's resume, which was part of the trial record in this case, shows that he was a police officer with the Royal Bahamas Police Force from December 1987 until June 1994; further, Petitioner's resume states that he was a student at Morehouse College scheduled to graduate in May 2002.  (HT1 853).

Petitioner's trial counsel stated in his affidavit that he did not interview Mr. Cruse prior to Petitioner's trial.  (HT2 10).

AO 72A
(Rev.8/82)

[Doc. 8-2 at 11-12]. These factual findings are supported by the record. [Doc. 13-1 at 38, 40-42, 44-45; Doc. 13-13 at 9; Doc. 13-7 at 10; Doc. 15-5 at 56; Doc. 16-17 at 10]. After correctly setting forth the <u>Strickland</u> standard, the state habeas court made the following conclusions of law:

> The testimony of Mr. Cruse at the evidentiary hearing regarding his knowledge of the man the victim was allegedly scared of provides no clarity as to the identity of this man and thus does not constitute an affirmative showing as to how trial counsel's failure to interview Mr. Cruse affected the outcome of Petitioner's trial or would have been relevant and favorable to Petitioner. It is clear from the description of the former friend the victim gave Mr. Cruse that she could just as easily have been referring to Petitioner as to James Johnson. Petitioner had previously served as a police officer and had a tie to the Atlanta University System. Conversely, no evidence has been introduced showing that James Johnson had any ties whatsoever to the Atlanta University System.

[Doc. 8-2 at 13]. The state habeas court then held that petitioner "failed to meet his burden to show that appellate counsel was ineffective for failing to raise on direct appeal an argument that trial counsel was ineffective for failing to investigate James Johnson." [<u>Id.</u> at 14].

Petitioner argues that "[t]he state habeas court's conclusion that Peart's statements to Cruse could 'just as easily have been referring to Petitioner as to James Johnson' was an unreasonable application of <u>Strickland</u>" because "Peart told Cruse

that she was afraid of a former boyfriend who had a pair of her sandals, . . . and Johnson admitted to having those sandals." [Doc. 9 at 19-20]. Actually, Cruse testified that Peart had told him that this former male friend "had recently contacted her with regards to some personal belongings of hers . . . some clothing items, I think." [Doc. 13-1 at 38]. Further, Cruse stated that "[f]or some reason, shoes or a pair of shoes [stuck] out in [his] mind." [Id. at 38-39]. At petitioner's trial, Johnson testified that he had some sandals and a pair of blue jean shorts that Peart had left in his car and that she had asked him to return her sandals because they were her favorite pair. [Doc. 15-5 at 56].

Contrary to petitioner's assertions, this testimony does not clearly indicate that the former male friend about whom Peart had expressed concerns to Cruse was Johnson and not petitioner. Even if the Court agreed, "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." Wood v. Allen, 130 S. Ct. 841, 849 (2010). As noted above, the state habeas court's factual findings were supported by the record, and it was not unreasonable for that court to conclude that Peart "could just as easily have been referring to Petitioner as to James Johnson." [Doc. 8-2 at 13]. Thus, the state habeas court's rejection of ground (2)(b) is entitled to deference

25

pursuant to § 2254(d).  See <u>Harrington</u>, 131 S. Ct. at 785; <u>Williams</u>, 529 U.S. at 404-05, 412-13; <u>Strickland</u>, 466 U.S. at 694.

Petitioner argues that if "the jury had heard Cruse's additional testimony it might well have led to an acquittal," [Doc. 9 at 20], but petitioner has not shown that there is a reasonable probability that the outcome of his trial would have been different with this evidence since petitioner's trial counsel actually presented to the jury evidence that Peart had told Cruse that a former boyfriend had a pair of her sandals but would not drop them off at her apartment building because he wanted a confrontation with her, and Johnson testified that he had Peart's sandals. [Doc. 15-3 at 57-58; Doc. 15-4 at 71-75].  In his opening statement, petitioner's counsel made reference to this evidence and told the jury that the evidence would show that Johnson was the former boyfriend who had Peart's sandals and wanted a confrontation with her. [Doc. 15-2 at 19-20].  Petitioner's counsel elicited testimony about this subject from Detective Fagler, Cruse, and Johnson during the trial.

Specifically, trial counsel questioned Detective Fagler on cross-examination about having received information that a former boyfriend of Peart's, later determined to be Johnson, had some of her property but would not return it because he wanted a confrontation. [Doc. 15-3 at 57-58].  Cruse testified on cross-examination that he

26

provided a statement to the police indicating that Peart had told him that an unidentified ex-boyfriend of hers had a pair of her sandals but would not return them without having personal contact with her. [Doc. 15-4 at 73-75]. Petitioner's trial counsel also directly questioned Johnson about having Peart's sandals and not returning them to her, and Johnson admitted that he had her sandals and had not returned them. [Doc. 15-6 at 24, 88]. Petitioner's trial counsel also cross-examined Johnson about whether he had a violent confrontation with Peart on June 7, 2001, [Id. at 99-100], and he specifically accused Johnson of killing Peart and argued the same in his closing, even referring to the statement Cruse gave to the police as evidence that Johnson should have been interrogated as a suspect in Peart's death. [Id. at 100; Doc. 16-2 at 13, 20, 22] Thus, trial counsel essentially presented the evidence and arguments that petitioner contends would have led to a different outcome at his trial, yet the jury still convicted him, and on this record the Court finds that petitioner has failed to show prejudice with respect to his claim in ground (2)(b).

> 5. **Ground (3)(b): Appellate Counsel's Failure to Review Certain Evidence**

In ground (3)(b), petitioner asserts that appellate counsel was ineffective for failing to review evidence about the lead detective's contact information being in the

victim's address book. [Doc. 1 at 5]. The state habeas court made the following

findings of fact as to this ground:

> The lead homicide detective in this matter testified at the August
> 3, 2010, evidentiary hearing that he located the victim's address book at
> the scene and reviewed it during his investigation. (HT1 23-24). He
> testified at the evidentiary hearing that his name and phone number
> appeared in the victim's address book, but that he did not remember if he
> recalled seeing his name in the address book previously. (HT1 25-26).
> He testified that he did not know the victim and did not recall ever
> meeting the victim. (HT1 26-27). He testified that he would not have
> been surprised to see his name in the address book because he
> investigated about forty (40) cases a month of assaults, harassing phone
> calls, and other similar reports and that someone else could have given
> the victim his number to follow up on something. (HT1 26-27). He
> testified that he would have no cause for concern to find his name and
> number in the address book. (HT1 27). He testified that he estimates that
> he has handed out thousands of his cards involving assaults in the area
> where the victim lived and went to college and that someone else could
> have given the victim one of his cards or told the victim that he was the
> person the victim needed to call to investigate an incident. (HT1 30).

> Appellate counsel testified that during his preparation of
> Petitioner's appeal he did not discover that the homicide detective's name
> appeared in the victim's address book, which was part of the evidence
> during Petitioner's trial. (HT1 45-46). He testified that this would have
> been an important fact for him to look at, but that it would be hard for
> him to say at this point what he could have done with this information in
> terms of preparing the appeal. (HT1 46).

28

[Doc. 8-2 at 7]. These factual findings are supported by the record. [Doc. 13-1 at 27-31, 34, 49-50]. After correctly setting forth the <u>Strickland</u> standard, the state habeas court made the following conclusions of law as to this ground:

> Petitioner has failed to show that appellate counsel's decision not to raise this issue on direct appeal was an unreasonable one that only an incompetent attorney would make and has thus failed to show cause and actual prejudice. The homicide detective testified that he did not know the victim and that he was not surprised that his name was in the victim's address book due to the nature of his work. Appellate counsel testified that while the detective's name and number appearing in the victim's address book would have been an important piece of information for him in preparing the appeal, he could not say what he might have been able to do with this information in terms of framing an issue for the appeal.

[Doc. 8-2 at 7-8].

Petitioner presents no argument that the state habeas court unreasonably applied <u>Strickland</u> to this ground. [<u>See</u> <u>generally</u> Doc. 9]. Additionally, the undersigned can discern no potentially meritorious claim that appellate counsel could have raised based on the homicide detective's contact information appearing in the victim's address book. Thus, the state habeas court's rejection of this ground is entitled to deference pursuant to § 2254(d). <u>See</u> <u>Harrington</u>, 131 S. Ct. at 785; <u>Williams</u>, 529 U.S. at 404-05, 412-13; <u>Eagle</u>, 279 F.3d at 943.

AO 72A
(Rev.8/82)

## III. CERTIFICATE OF APPEALABILITY

Under Rule 22(b)(1) of the Federal Rules of Appellate Procedure, "the applicant cannot take an appeal unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)." Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Section 2253(c)(2) of Title 28 states that a certificate of appealability ("COA") shall not issue unless "the applicant has made a substantial showing of the denial of a constitutional right." A substantial showing of the denial of a constitutional right "includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (internal quotation marks omitted). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, . . . a certificate of appealability should issue only when the prisoner shows both that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the

district court was correct in its procedural ruling." <u>Jimenez v. Quarterman</u>, 555 U.S. 113, 118 n.3 (2009) (internal quotations marks omitted) (citing <u>Slack</u>, 529 U.S. at 484). Based on the foregoing discussion of petitioner's grounds for relief, the resolution of the issues presented is not debatable by jurists of reason, and the undersigned recommends that petitioner be denied a COA

## IV. CONCLUSION

For the reasons set forth above, **IT IS RECOMMENDED** that this 28 U.S.C. § 2254 petition, [Doc. 1], be **DENIED**, that this action be **DISMISSED**, and that a COA be **DENIED**.

The Clerk is **DIRECTED** to terminate the referral to the Magistrate Judge.

**SO RECOMMENDED**, this 2nd day of October, 2012.

*Russell G. Vineyard*
RUSSELL G. VINEYARD
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/82)